## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| G & V FARMS, LLC, | : | |
| | : | **Civil Action No. 1:09-CV-1324** |
| **Plaintiff,** | : | |
| | : | **(Judge Jones)** |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **HARTFORD FIRE INSURANCE** | : | |
| **COMPANY and VARICK M.** | : | |
| **WARREN,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff G&V Farms, LLC ("G&V") brought this action against its insurer, Hartford Fire Insurance Company ("Hartford"), seeking to recover for losses allegedly caused by theft and other dishonest acts of Varick M. Warren, a former member and employee of G&V.  Now pending before the Court is G&V's motion to compel Defendant Warren to respond more fully to document requests and interrogatories that G&V has propounded as part of its discovery in support of its claims.  (Doc. 53)  In the motion and supporting brief (Doc. 57), Plaintiff asserts that Warren has failed entirely to respond to the requests or interrogatories, and Plaintiff anticipates that Warren has tacitly invoked his right under the Fifth Amendment to refrain from giving self-incriminating statements or testimony.

For his part, Warren acknowledges that he is invoking his Fifth Amendment right to avoid self-incrimination with respect to some of the discovery requests at issue, but indicates that he is prepared to fully respond to other requests to which he has not yet provided an answer or response.  Moreover, Warren suggests that he may be prepared to answer some of the questions put to him in the form of interrogatories if those questions were presented during an oral deposition.

Upon consideration of the parties' briefs, we will direct that Warren provide full and complete responses to those discovery requests to which there is no objection or privilege asserted, and to which Warren has represented he stands ready to answer. However, we will not compel Warren to provide answers to each document request or interrogatory to the extent that Warren can articulate a reasonable apprehension that by providing answers or furnishing documents he may be waiving his right to avoid giving self-incriminating testimony as part of the discovery in this civil action.

Instead, with respect to the disputed interrogatories, we will direct Warren either to answer all of the interrogatories propounded upon him, or to clearly assert the privilege with respect only to those interrogatories that he reasonably believes call on him to provide potentially incriminating responses, and submit to the Court a particularized explanation of the basis for claiming the privilege and why he has a reasonable apprehension of self-incrimination.

With respect to Plaintiff's document requests, we will direct that Warren submit to the Court all documents within his possession that he believes may be responsive to Documents Request Nos. 4, 5, and 14-25, and which he reasonably believes he is entitled to withhold from production pursuant to the privilege against self-incrimination. In addition, as to each document that Warren believes, if produced by him, would compromise his rights afforded by the Fifth Amendment, he will be required to submit a written statement explaining why his production of the documents would amount to a violation of the privilege asserted. Thereafter, the Court will review the submissions and statement and determine whether Mr. Warren has a legitimate basis to claim a Fifth Amendment privilege with respect to each document.

## II.    <u>STATEMENT OF THE CASE</u>

On or about April 17, 2006, Verdelli Holdings, LLC, the David and Susan Gill Family Trust, and Varick Warren formed a Pennsylvania limited liability company called G&V Farms, LLC.  The company was in the business of processing and wholesaling primarily organic produce, and maintained operations in Harrisburg, Pennsylvania, and Newburgh, New York.

G&V was operated so that the Verdellis and Gills acted as the financiers of the company, by supplying the initial capital investment, equipment, and processing

facility, while Varick Warren was to provide operational expertise, knowledge, and access to relevant markets.   According to G&V, after the business became operational, Warren was appointed as the General Manager of G&V's office in Newburgh, New York, and was granted broad discretion with respect to the company's operations.

Hartford issued G&V a Special Multi-Flex Insurance Policy, with policy number 16 UUN AF6846, which was effective from May 1, 2007, to May 1, 2008 (the "Policy").   The Policy contained the following relevant exclusions:

### PROPERTY CHOICE COVERED CAUSES OF LOSS AND EXCLUSIONS

### B.       SPECIFIC EXCLUSIONS

\*\*\*\*\*\*\*\*

#### 6.       Dishonest Acts

We will not pay for loss or damage caused by, resulting from, or arising out of dishonest or criminal acts by you, any of your partners, **_members_**, officers, managers, employees, directors, trustees, authorized representatives or anyone else to whom you entrust the property for any purpose;

(1)      acting alone or in collusion with others; or

(2)      whether or not occurring during the hours of employment.

4

\*       \*       \*\*\*\*\*\*

## PROPERTY CHOICE COMMON CRIME COVERAGES FORM (BUSINESS CRIME)

### E.    Exclusions

1.    This insurance does not apply to:

a.    **Acts Committed by You, Your Partners or Your *Members***

Loss resulting from "theft" or any other dishonest act committed by:

(1)    You; or

(2)    Any of your partners or "***members***"; whether acting alone or in collusion with other persons.

(Doc. 33, Ex. B) (emphasis added.)

On July 13, 2007, G&V discovered facts that caused the company to conclude that Warren was involved in dishonest activity adversely affecting the company. Specifically, G&V claims to have discovered that in addition to Warren's interest in G&V, he was also serving as the sole shareholder of two other companies that were also involved in the produce business. According to G&V, the company discovered that Warren, in his capacity as an employee of G&V, was selling produce processed at G&V's Newburgh, New York facility, and invoicing customers through his other companies, thereby effectively stealing from G&V. Additionally, G&V claims to

have learned that Warren was receiving kickbacks from one of G&V's raw produce suppliers.

Accordingly, four days later, on July 17, 2007, G&V made a claim to Hartford under the Policy to recover losses allegedly caused by Warren's dishonest acts. Thereafter, on October 26, 2007, G&V submitted a "Proof of Loss" to Hartford, claiming that it had suffered a loss of $384,135.21 "through the dishonesty of Varick Warren" between June 1, 2006, and July 13, 2007. (Doc. 33, Ex. F)

On January 28, 2008, Hartford sent G&V a letter stating that the Policy exclusions set forth above applied to Warren's acts, and informing G&V that the insurer would, therefore, not provide coverage for losses stemming from Warren's dishonest acts or theft because of his capacity as a member of the company. (Doc. 33, Ex. G) This lawsuit followed, with G&V seeking insurance coverage and indemnity from Hartford for its alleged losses, and recovery from Varick Warren for alleged breach of contract and conversion.

## III.   **FACTUAL BACKGROUND TO THE MOTION TO COMPEL**

After this case was commenced, G&V claims that on March 5, 2010, it served on Mr. Warren Interrogatories and Request for Production of Documents. (Doc. 53, ¶ 31) According to G&V, Warren answered this discovery on April 6, 2010, by objecting or otherwise asserting that he was not in possession of the requested

documents.  (Id. ¶ 32)  G&V contends that Warren invoked the protections afforded to him by the Fifth Amendment to the United States Constitution with respect to at least some of the discovery propounded upon him in this first set of document requests and interrogatories.  (Id. ¶¶ 34-38)

Following this initial round of discovery, on July 30, 2010, G&V served on Mr. Warren a new set of interrogatories and document requests.  It is this set of discovery that is the subject of the instant motion to compel.  (Doc. 53, Ex. A and B)  There appears to be no dispute that Mr. Warren has not responded at all to this discovery, even to assert a privilege or other basis to resist the document requests and interrogatories.  (Doc. 58, at 2)  In the absence of any response, and informed by Mr. Warren's previous invocation of the privilege in responding to previous discovery requests, on May 23, 2011, G&V filed this motion, anticipating that Mr. Warren had declined to respond to the discovery requests by tacitly invoking his Fifth Amendment right to avoid giving incriminating testimony.  (Doc. 53, ¶ 48)  After the District Court referred the motion to the undersigned, G&V filed a brief in support of the motion on August 1, 2011.  (Doc. 57)

Warren filed a brief in opposition to the motion on August 15, 2011.  In his brief, Warren acknowledges that with respect to some of the discovery requests and interrogatories, he reasonably believes he is entitled to invoke the privilege against

self-incrimination as a basis to avoid responding. (Doc. 58) However, with respect to a substantial portion of the requested discovery, including discovery at issue in the motion to compel, Warren concedes that he is not asserting the privilege, and represents that he will provide responses within 30 days of the Court's resolution of G&V's motion. (Id., at 6-8) Nevertheless, Warren maintains that the privilege permits him to resist some of the document requests and interrogatories on the grounds that the answers he would have to furnish could potentially be incriminating.[1] Accordingly, it is in response to a narrower set of discovery requests that we must resolve G&V's motion to compel, and to determine whether Warren's recent assertion of the privilege provides a legitimate basis to allow him to withhold discovery responses.

G&V elected not to file a reply in response to Warren's arguments. Accordingly, the motion is ripe for disposition and will be granted in part and denied in part.

---

[1] The Court has no information as to the potential that Mr. Warren may face criminal charges for the conduct alleged in this civil action. It does appear that no law enforcement agency has taken action on this case, which relates to conduct alleged to have occurred more than four years ago, despite the Plaintiff's suggestion that the Federal Bureau of Investigation has been provided information about Mr. Warren's alleged activities.

## IV.   **DISCUSSION**

### A.   **Warren Will Be Directed to Respond to Any Document Requests or Interrogatories to Which He Does Not Contend a Privilege Applies.**

At the outset, we note that Mr. Warren has acknowledged that he has failed to respond in any way to the second set of document requests and interrogatories that were served upon him in July 2010.  (Doc. 58, at 2; Doc. 53, Ex. A and B)  Although G&V anticipated that Warren would assert his Fifth Amendment privilege with respect to each of the outstanding discovery requests, Warren has subsequently clarified that he is invoking the privilege only with respect to some of the discovery. Accordingly, Warren has represented that he is prepared to respond to Document Request Nos. 1, 2, 3, 6-13.[2]  (Doc. 58, at 6, 8)  To facilitate the discovery process in this case, we will enter an order directing Warren to respond to these requests within 30 days.

With respect to the outstanding interrogatories that are the subject of the motion to compel, Warren has represented that he is prepared to respond, at least in

---

[2]  Warren has not expressly indicated that he is prepared to respond to Document Request Number 13, but he has not asserted that a response to this request would be privileged.  Accordingly, the Court anticipates that Warren intends to respond to Document Request Number 13.

9

part, to Interrogatory Nos. 1-13.[3] (Id., at 6-8)  We will also order Warren to respond to these interrogatories within 30 days.

> **B.    Whether Warren May Assert the Fifth Amendment Privilege With Respect to the Remaining Disputed Discovery Requests Cannot Be Resolved on the Current Record.**

In its motion, G&V had anticipated that Warren would claim that the Fifth Amendment's privilege justified his refusal to respond to the discovery requests.  On the basis of this anticipation, G&V was left to speculate, to some degree, as to the contours of Warren's argument, and to offer anticipatory rebuttal to the assertions G&V believed Warren would make.  For his part, Warren confirmed that he was resisting some of the discovery propounded on him on the basis that the Fifth Amendment protected him from responding.  However, in making this assertion, Warren has not provided the Court with any of the potentially responsive documents for which he claims a privilege.  Similarly, Warren has not provided a sufficiently detailed argument to explain why the privilege entitles him to decline to provide any response at all to the disputed interrogatories.  Furthermore, G&V has declined to submit a reply brief in response to Warren's arguments and proposals, and the Court

---

[3]  Warren maintains that as to some of the interrogatories, he will be able to respond only partially.  We will direct that Warren respond to these interrogatories in whatever way he deems possible, and clearly indicate in his response whether he is invoking the Fifth Amendment privilege as a justification for failing to respond in part or at all to any of the interrogatories that have been propounded.

is thus without the benefit of G&V's view regarding the legal arguments that Warren has articulated, for the first time, in his brief opposing G&V's motion.  On such a thin record, we conclude we are unable to resolve the pending discovery dispute.  As another magistrate judge in the Western District of Pennsylvania observed in a similar context, "Defendant['s] assertions regarding [his] privilege [is] tenable in the abstract, but [it is] insufficient in the details.  More exacting standards apply regarding Defendant['s] refusal to produce documents, and to provide adjudicable invocations of the Fifth Amendment in response to interrogatories . . . ." Burt Hill v. Hassan, No. 09-1285, 2009 U.S. Dist. LEXIS 113144, at *6 (W.D. Pa.  Dec. 4, 2009).

The Fifth Amendment to the United States Constitution provides that "no person shall . . . be compelled in any criminal case to be a witness against himself . . . ."  U.S. Const. amend. V.  "The Fifth Amendment privilege applies not only at criminal trials, but "in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate [the defendant] in future criminal proceedings." United States v. Lee, 315 F.3d 206, 211 (3d Cir. 2003) (quoting Minnesota v. Murphy, 465 U.S. 420, 426 (1984)).  "The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." Hoffman v. United

States, 341 U.S. 479, 486 (1951). Accordingly, "[c]ompelled testimony that communicates information that may 'lead to incriminating evidence' is privileged even if the information itself is not inculpatory." Doe v. United States, 487 U.S. 201, 208 n.6 (1988).

In this case, there are two sets of discovery requests at issue, document requests and interrogatories. We address these discovery requests separately below.

### 1. Document Requests

In his brief in opposition to Plaintiff's motion to compel, Mr. Warren asserts that his Fifth Amendment privilege against self-incrimination permits him to refuse to produce documents in his possession responsive to Document Request Nos. 4, 5 and 14-25. Upon consideration, we do not find that Mr. Warren has sufficiently explained how the privilege applies to shield the discovery at issue.

Judge Conner of this Court explained the application of the Fifth Amendment in response to document requests as follows:

> The Fifth Amendment protects only "compelled" testimony. It does not protect the content of voluntarily created documents. United States v. Hubbell, 530 U.S. 27, 36 147 L. Ed. 2d 24, 120 S. Ct. 2037 (2000); United States v. Doe, 465 U.S. 605, 610, 79 L. Ed. 2d 552, 104 S. Ct. 1237 (1984) ("Doe I"); Fisher, 425 U.S. 391, 409, 48 L. Ed. 2d 39, 96 S. Ct. 1569 (1976). In the instant case, Bell, his clients, and his associates voluntarily created each of the requested documents. Therefore, the Fifth Amendment

> does not protect their content. Nevertheless, the Fifth Amendment does, at times, protect against the compelled act of producing voluntarily created documents to the government. Hubbell, 530 U.S. at 36; Doe I, 465 U.S. at 613-14. See also Fisher, 425 U.S. at 410 ("The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced.").

United States v. Bell, 217 F.R.D. 335, 339 (M.D. Pa. 2003). Although any order directing a litigant to respond to document requests necessarily involves an element of compulsion, Fisher, 425 U.S. at 409, this compulsion only triggers protection under the Fifth Amendment if the evidence at issue is both testimonial and incriminating. As noted above, the Fifth Amendment protects the Defendant only against being "compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. "The word 'witness' in the constitutional context limits the relevant category of compelled incriminating communications to those that are 'testimonial' in character." Hubbell, 530 U.S. at 34. Accordingly, the Supreme Court has made it clear that "a person may be required to produce specific documents even those that contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the privilege." Id. at 35-36 (citing Fisher v. United States, 425 U.S. 391, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1976)).

13

However, if the act of producing the documents themselves explicitly or implicitly communicates a statement of fact, then the act of production in response to a summons may have a compelled testimonial aspect protected by the Fifth Amendment.  United States v. Doe, 465 U.S. 605, 612-13, 104 S. Ct. 1237, 79 L. Ed. 2d 552 (1984); see also Hubbell, 530 U.S. at 37 (production of documents may constitute testimonial communication where merely acknowledging possession of the documents "would admit that the papers existed, were in [the witness's] possession or control, and were authentic").  The relevant inquiry then is not whether the content of the documents is incriminatory, but instead whether the testimony inherent in the act of producing these documents is incriminatory. "This determination is a fact intensive inquiry that must be done by the court on a document to document basis."  United States v. Worley, Misc. No. 09-142, 2009 U.S. Dist. LEXIS 71781, 2009 WL 2496365, at *2 (M.D. Pa. Aug. 14, 2009) (citing Doe, 465 U.S. at 613-14).

Guided by the foregoing legal standards, and upon review of Defendant Warren's brief, and his relatively abbreviated assertion that the privilege encompasses the mere act of his production of documents responsive to Document Request Nos. 4, and 14-25, we are unable to find that Mr. Warren is entitled to claim the privilege with respect to each challenged request.  Instead, we conclude

14

that before we can ultimately determine whether Mr. Warren can reasonably assert

the privilege in response to these document requests, Mr. Warren must submit

responsive documents to the Court for *in camera* review.  See id. at *8-9 (ordering

production of documents for *in camera* review before ruling on privilege claims);

Hassan, 2009 U.S. Dist. LEXIS 113144, at 9-10 (same).  In addition, we will

require Mr. Warren to submit a written statement explaining why he is privileged

to withhold the documents from production under the Fifth Amendment.  In

preparing such an explanation, Mr. Wallace is expressly instructed that "[t]he

relevant inquiry . . . is not whether the content of the document[] is incriminatory,

[but] whether the testimony inherent in the act of producing [the] document is

incriminatory."  Worley, Misc. No. 09-142, 2009 U.S. Dist. LEXIS 71781, 2009

WL 2496365, at *2 (M.D. Pa. Aug. 14, 2009); see also Hubbell, 530 U.S. at 36-37.

### 2.    Interrogatories

With respect to the interrogatories for which the privilege has only been

asserted by way of argument in Warren's brief, we note that responses to

interrogatories propounded in a civil action may fall within the privilege against

self-incrimination.  See S.E.C. v. Leach, 156 F. Supp. 2d 491, 494 (E.D. Pa. 2001)

(citing, *inter alia*, North River Ins. Co. v. Stefanou, 831 F.2d 484, 486-87 (4th Cir.

1987) (holding that the privilege "protects an individual not only from

involuntarily becoming a witness against himself in a criminal proceeding but also

from answering specific allegations in a complaint or filing responses to

interrogatories in a civil action where the answers might incriminate him in future

criminal actions.")); see also Burt Hill v. Hassan, No. 09-1285, 2009 U.S. Dist.

LEXIS 113144, at *11 (W.D. Pa.  Dec. 4, 2009**)** ("Responses to interrogatories

clearly may fall within the privilege against self-incrimination).

Although Warren has offered some explanation for invoking the privilege as

a basis for not answering Interrogatory Nos. 14-24, we do not find that he has

provided a sufficient and particularized justification that would permit the Court to

rule that the privilege allowed Warren to withhold answers to any of these

interrogatories.  In essence, Warren merely refers the Court to his arguments that

he made to justify not responding to the disputed discovery requests.  This is, in

our estimation, inadequate to permit the Court to rule that Warren may

legitimately claim that the Fifth Amendment privilege against self-incrimination

entitles him to refuse to answer Interrogatory Nos. 14-24.

"[A] witness cannot relieve himself of the duty to answer questions . . . put

to him by a mere blanket invocation of the privilege."  Nat'l Life Ins. Co. v.

Hartford Accident & Indem. Co., 615 F.2d 595, 598 (3d Cir. 1980).  Instead, the

witness claiming the privilege "must place before the court enough information to

16

'effectively determine whether a responsive answer to [the] question or an explanation of why it cannot be answered might be incriminating.'" Burt Hill, Inc. v. Hassan, Civ. A. No. 09-1285, 2009 U.S. Dist. LEXIS 113114, at *12 (W.D. Pa. Dec. 4, 2009) (quoting Nat'l Life Ins. Co., 615 F.2d at 598)).

Upon consideration, we find ourselves unable to reach a fully informed decision as to whether Mr. Warren can legitimately claim a privilege to answering some or all of the questions propounded to him in Interrogatory Nos. 14-24.  In essence, Warren has simply asserted that "Interrogatories 14 through 24 are objected to for the reasons enumerated above at Section III.A.  The information sought by these interrogatories is solely in the possession of Mr. Warren and, accordingly, it is in fact 'testimonial.'" (Doc. 58, at 7)  But Warren's argument with respect to those document requests was principally based on his contention that producing the documents themselves, even if those documents were prepared voluntarily, would be "testimonial" in nature – and, therefore, would be privileged under Hubbell.  But the analysis in Hubbell concerned document requests, not interrogatories, and we do not find that Mr. Warren has adequately explained how providing answers to all or some of the questions put to him in discovery is covered by privilege.

17

Indeed, Warren seems to acknowledge that he may be able to respond to the interrogatories, at least in part, and particularly if the questions would be developed with greater specificity, and posed to him in the course of a deposition. (Doc. 58, at 7)  Given the generic, non-specific justifications offered in support of Warren's belated assertion of the privilege, the Court is unable to rule that the privilege applies to Interrogatory Nos. 14-24.  These responses, made for the first time in Mr. Warren's brief, "provide insufficient grounds for the Court to fulfill its 'juridical responsibility of objectively assessing whether [their] silence is justified.'" Burt Hill, Inc., 2009 U.S. Dist. LEXIS 113144, at *15 (quoting Nat'l Life Ins. Co., 615 F.2d at 598).

Before any Fifth Amendment privilege may attach, Mr. Warren must clarify the basis for asserting the privilege, and do so with specificity.  We will, therefore, direct Mr. Warren either to answer the interrogatories in question, or if he believes he is entitled to refuse to answer on the basis of privilege, explain with particularity to the Plaintiff and the Court the basis for the assertion.  To the extent we find Mr. Warren's follow-up explanations regarding interrogatory responses to be inadequate, we may consider convening an evidentiary hearing to assist the Court in order to resolve any remaining Fifth Amendment privilege claims.  See Burt Hill, Inc. v. Hassan, No. 09-1285, 2009 U.S. Dist. LEXIS 113144, at *15

18

(W.D. Pa. Dec. 4, 2009) (noting that if the defendant's explanation regarding the application of the privilege was unsatisfactory, the court reserved the option of holding an evidentiary hearing).

**C.     The Court Declines to Provide the Parties with Anticipatory Rulings, or Advance Guidance, Regarding Mr. Warren's Potential Assertion of the Privilege in Response to Questions That Might Be Propounded at Mr. Warren's Deposition.**

Finally, Plaintiff has requested that the Court "provide specific guidance to the parties regarding the permissible scope of Warren [sic] invocation of his Fifth Amendment privileges during his deposition." (Doc. 53, ¶ 74) Essentially, G&V is asking that the Court "order Warren to fully and substantively answer all questions asked of him in his deposition related to the discovery that this Court orders Warren to produce." (Id. ¶ 75) We decline this request.

This Court is unable to speculate on the questions that might be propounded during Mr. Warren's yet-to-be scheduled deposition, and we find no basis to issue an anticipatory ruling requiring that Mr. Warren answer all questions that might conceivably be asked. Just as we will not dictate to Plaintiff in advance the deposition questions that may permissibly be asked of Mr. Warren, we will not issue an advance order that directs Mr. Warren to relinquish his right to invoke the Fifth Amendment privilege against self-incrimination at his deposition to the

extent that he, and his counsel, reasonably believe that a basis exists to assert the privilege in response to one or more questions that may be posed. Any disputes over Mr. Warren's potential assertion of the privilege at his deposition must wait until such time as the deposition is actually taken.

### D.    Risk of Sanctions

In closing, we find it appropriate to encourage the parties to endeavor to reach a mutually agreeable resolution of their disputes, to the extent possible. We make this observation, in part, because unlike in criminal cases, in a civil case reliance on the Fifth Amendment may result in adverse consequences for Mr. Warren, and may also deprive Plaintiff in discovering facts important to this litigation. As the Third Circuit explained:

> The privilege against self-incrimination may be raised in civil as well as in criminal proceedings and applies not only at trial, but during the discovery process as well. Unlike the rule in criminal cases, however, reliance on the Fifth Amendment in civil cases may give rise to an adverse inference against the party claiming its benefits. Baxter v. Palmigiano, 425 U.S. 308, 318, 47 L. Ed. 2d 810, 96 S. Ct. 1551 (1976). Use of the privilege in a civil case may, therefore, carry some disadvantages for the party who seeks its protection.
>
> On the other hand, invocation of the Fifth Amendment poses substantial problems for an adverse party who is deprived of a source of information that might

> conceivably be determinative in a search for the truth. Moreover, because the privilege may be initially invoked and later waived at a time when an adverse party can no longer secure the benefits of discovery, the potential for exploitation is apparent. Thus, the complications that may arise in civil litigation may be divided into two categories -- the consequences of the privilege when properly invoked, and the effects when it is abused causing unfair prejudice to the opposing litigant.

SEC v. Graystone Nash, Inc., 25 F.3d 187, 190 (3d Cir. 1994).  At the present time, we are unable to determine whether any sanctions would result if Mr. Warren persists in asserting the privilege to answering the discovery propounded upon him in this action, but we make the foregoing observation to make the parties aware that there may be consequences for both sides in the event Mr. Warren continues to withhold answers to interrogatories or document requests.[4]  We thus encourage the parties to attempt to reach some mutually agreeable resolution of

---

[4]  In the event the District Court is called upon to fashion an appropriate remedy if Mr. Warren invokes the privilege as a shield to answering discovery, the Third Circuit has explained that

> [a] trial court must carefully balance the interests of the party claiming protection against self-incrimination and the adversary's entitlement to equitable treatment. Because the privilege is constitutionally based, the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side.

Id. at 192.

the pending discovery dispute that avoids the need for the Court to consider the extent to which sanctions, such as an adverse inference, may be called for in this case.

## V.    <u>ORDER</u>

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED THAT Plaintiff's motion to compel (Doc. 53) is DENIED.

IT IS FURTHER ORDERED THAT on or before **<u>Friday, October 28, 2011</u>**, Defendant Warren shall provide Plaintiff with responses to Document Request Nos. 1, 2, 3, 6-13, and Interrogatory Nos. 1-13.

IT IS FURTHER ORDERED THAT on or before **<u>Friday, October 28, 2011</u>**, with respect to Document Request Nos. 4, 5 and 14-25, Defendant Warren shall either (1) provide Plaintiff with answers to each of the requests, or (2) shall otherwise submit for *in camera* review all documents Defendant Warren claims are privileged under the Fifth Amendment, together with a written statement explaining why withholding the documents is justified.

IT IS FURTHER ORDERED THAT on or before **<u>Friday, October 28, 2011</u>**, Defendant Warren shall either (1) provide Plaintiff with answers to Interrogatory Nos. 14-24, or (2) shall assert the privilege in response to these

interrogatories, and submit to the Court a particularized explanation of the basis for claiming the privilege and why he has a reasonable apprehension of self-incrimination.


*/s/ Martin C. Carlson*_____

Martin C. Carlson

United States Magistrate Judge

Dated: September 29, 2011